Thank you, Your Honors, and may it please the Court, my name is Lauren Mills and I represent Kurt Evans, who is in the gallery, and his company, WhipGolf. The issue concerns the – the primary issue concerns the enforceability of a term sheet under which Mr. Evans was going to license his invention, a throw golf stick, to PlusOne. And the enforceability of that turns on the choice of law determination. Can I just actually stop you right there and I apologize? Is that clear? It seemed to me that there's not really a very big difference in the law of Massachusetts and the law of Virginia when it comes to this kind of preliminary agreement. I think there's a very big difference. What's the difference? Okay, in – Virginia is very hostile to preliminary agreements. And Virginia won't blue pencil, you know, covenants not to compete. It won't add any additional terms. It won't infer anything. Massachusetts is much different. In Massachusetts, a signature on a document means something. Well, but in Massachusetts, as in Virginia, there's a strong inference, right, that where a preliminary agreement expresses – expressly contemplates there's going to be a formal agreement, then the preliminary one is not a binding contract. I mean, that's – that's the – that's the rule that the court below applied from Virginia, and they have the same rule in Massachusetts. I agree. Every Massachusetts case says that. And then they – and then every other – every Massachusetts case also says that when parties have agreed on essential terms and a formal memorandum – a formal memorandum is nothing more than a polished memorandum of an agreement that's already made, they will enforce the preliminary agreement. So they say the same thing in both instances. So you have to look at what the Massachusetts courts do because they say two things that are hard to harmonize. I agree with that. But what they have – what they have done in cases like this is they've – they focus on was there a present intent to be bound, and does the agreement, the preliminary agreement, contain the essential terms to be enforceable. Those are the issues. And on present intent to be bound, there couldn't be a clearer intent than in this case. There were three – Kagan in this case, right, that doesn't the last sentence of the agreement of the term sheet say something like, we're going to work toward a subsequent binding agreement, which, I mean, there's a pretty strong inference that this isn't a binding agreement if you're going to work toward one. What it says is the agreement, and what they signed their names to is we're going to record the terms of the term sheet. No, it doesn't say that. And in a – in a – in a – Are you saying that's literally what that last sentence says? It's literally what it says. I thought it said they agree to work in good faith to record the terms of the term sheet, but they agree to work in good faith, and then they will record it in a binding agreement. And I don't think that means anything about whether the term sheet is binding or unbinding. An agreement to record the terms of the term sheet does not lead to – Well, for working good faith toward doing it. Obviously, some work is going to be involved. It's not as simple as just transcribing it. I think it's not as simple as just transcribing it. And Massachusetts allows people to contemplate a more polished memorandum. That's clear. And the issue is whether you have the present intent to be bound. And an agreement that says we're going to record the terms of the term sheet does not leave the impression that there are open material terms to be negotiated. It doesn't indicate that a present intent to be bound because it indicates you will be bound in the future. I don't think that's what it says. It says the more polished agreement is going to be binding. There's no question. But it doesn't say that it has to be – that this agreement is not binding. In the Massachusetts courts, in the Gorin case, as the granddaddy of all Massachusetts cases on this issue, says that if you sign your name to a document that has all the essential terms to enforce, and you don't intend that to be binding, the obligation is on you to make that crystal clear. And that's not what happened here. Aren't there a couple of, like, brackets and, you know, to-be-decided things? Isn't that – maybe you make your intent clear by saying, well, obviously, we're not bound. We don't even have all the terms yet. There were a couple of unfinished terms. There's absolutely no question about that. The issue is, do you have the essential terms to be enforced? This is a technology license agreement. What are the essential terms of a technology license agreement? You've got the license grant. That's clear. And they argued about it for three months. It was a sticking point. Was this license going to cover plus one's fling stick or not? They went back and forth on this, and they agreed on that at the end. The other was the royalty rate, 7.5 percent of gross sales royalty rate. They went back and forth on this. Each side sent a signed term sheet. The other one wouldn't sign it. They sent back a counter term sheet. When they resolved those two sticking points, that's when they signed. Well, aren't those two – those aren't sticking points. Those are the main points of what they wanted to agree about. How much you're going to get – I mean, that's the main thing, royalties, right? Can you look at the term sheet and determine how to calculate royalties? Absolutely. Okay, how? 7.5 percent of gross sales. That's what it says. And how were gross sales to be – Okay. They have an argument about – I mean, gross sales has a commonly understood meaning in accounting. Okay. And maybe someone can argue about whether it includes returns or not or something like that. That may be ambiguous, but it doesn't mean it's not enforceable. Why not? I'm reading the Massachusetts case, Targis Group, says that if it's going to be enforceable, the terms have to be sufficiently complete and definite. Yeah. And I see what's definite about gross sales. Gross sales – I'm trying to figure out what the number is. It's a comment that's taught to first-year accounting students all the time. What does gross sales mean versus profits? Okay. And this has a commonly understood term. If it's the same term, it would be in most final contracts. True. True. True. And so it's not so indefinite as to make it unenforceable. It might have to be resolved if somebody fights over it, but there is no fight over what it means right now. Okay. So we're having a hypothetical argument. Another issue that comes up in licensing agreements all the time is exclusivity. Okay. And that was something they went back and forth. Plus One wanted an exclusive license. Mr. Evans didn't want to give him one. What they agreed on was that Mr. Evans would give them – he wouldn't license it to anybody else for two years. He reserved the right to sell in competition with Plus One. That's what they agreed on. So that was the exclusivity. After they signed the term sheet, Mr. Van Allen went back and tried to get exclusivity. And Mr. Evans, and he's guilty of this, insisted on rigid adherence to the term sheet. That's what Mr. Van Allen said in his deposition. And that's exactly what he did. So exclusivity is clear, and that's an essential term of a license agreement. The term of a license agreement. As long as he had an application pending, the license would stay enforced. I'm the one who sort of got you off on this, and I want to let you move on in your argument. So I understand your argument for why the term sheet is enforceable in Massachusetts. Is it your position that it is not enforceable in Virginia, and that's why we have to decide choice of law? I think it would be – it's a much – let me put it this way. It should be enforceable in Virginia, but I'm not sure that it is. Okay. Virginia is hostile to preliminary agreements. And I think that's where Judge Hilton came out on this. He's very – he's got more experience with Virginia law than I do. He knows that Virginia courts are hostile to these kinds of agreements. Massachusetts law is not. Okay. Under Massachusetts law, so long as you have a present intent to be bound – and there's two cases that I hope the court looks at. It's the Leisher case and the Duff v. McKay case. And it involves a series of email negotiations where people go back and forth for weeks or months via email, and finally someone says via email, there's a deal. That's exactly what happened here. But more importantly, they didn't just do an email confirmation. They sent a signed agreement with all the essential terms in it. And what we have here is a case of licensor's or licensee's remorse who, days and weeks after the agreement, wanted to change the deal, and Mr. Evans wouldn't let him out of it. And Massachusetts won't let you do that. And the last essential term in this case was the guarantee. Mr. Evans was hanky about licensing his invention to someone who wasn't an established sports marketing organization like AMF or something like that. And so he wanted to have a personal guarantee from Mr. Van Allen. That's in there. The guarantee has language in there that we'll continue to negotiate this and maybe we'll agree to a substitute guarantor or some other form of collateral. But it's very clear if they can't reach agreement on that, Mr. Van Allen is on the hook. And we didn't waive that argument. We raised that argument at page 35 and note 9 of our opening brief. And so those are the essential terms, the grant, the royalty rate, the exclusivity, the term, and the guarantee. That's all you need to be enforceable in Virginia. Under Lex- In Massachusetts. I'm sorry, I apologize, in Massachusetts, Your Honor. And real briefly, because it appears to me you understand my choice of law argument. Under Lex Loci Contractus, questions of validity, interpretation, and construction are decided under the law of the place of contracting. There's no dispute that the last act necessary to make this an enforceable agreement was Mr. Van Allen's signature in Massachusetts. Actually, let me stop you because I don't understand the choice of law thing at all. I understand your position is that questions of contract validity are governed by the place of contract formation. But as I'm reading Virginia case law, it's actually all messed up. And there are cases out there saying, well, yes, but not if the place of formation is different from the place of performance. And in those cases, we go to place of performance. You — it's understandable why you're messed up, because the courts are kind of all over the place. Agreed. On this. And that's why we went back to first principles in our brief. And you start the — Well, that's convenient, but if Virginia has not gone back to first principles, I don't think we can do it just because it's more straightforward. No, no, Virginia has. Okay, if you look at the Virginia Supreme Court in the Arcla case in 1926, says validity, interpretation, construction. The federal courts, in weird circumstances, have ignored it. Tomas is an example. Judge Kacharis couldn't figure out where the place of contracting was, so he defaulted to place of performance. There are some other — there's other Virginia cases. There's Poole. And we actually can't find — Black versus Powers, which is recent from 2006. The Virginia Court of Appeals. I mean, there are Virginia cases applying this kind of, that's the rule, but there's also an exception if the place of performance is different from the place of formation. The exception is limited when the issue is breach. That's not the way I read those cases. You think you can read a case like Poole or Black versus Powers for that? I do, Your Honor. I do, Your Honor. If the issue is breach, and that's what it says, and you go back to Scudder, Scudder is the Supreme Court case that all these cases are based on, it's very clear. It breaks it into three categories, validity interpretation and construction under the place of contracting, breach under the place of performance, everything else under the law of the jurisdiction where the dispute was brought. That's what it says. This Court has followed Scudder multiple times, in Kecko most recently in 2015, and Elderberry. And so that's clear. It should have been — it should have been construed under Massachusetts law. I mean, there are a bunch of district court cases, right, saying we can't figure out what's going on in Virginia. There's these old cases. I don't know. Maybe that's not good law anymore. I'm going to do it. I'm not going to do it. I mean, there seems to be some confusion on this point, right? I agree there's some confusion or inconsistency as to how it's been applied, okay? I don't think that Judge Hilton was confused. He cites the right case in his opinion and then just moves on from it. And, you know, but the issue wasn't breach. The issue was validity interpretation or construction. Even if it is breach, we still win under place of performance analysis. The only thing Mr. Evans had to do was sit back in Virginia and receive the royalties. All of the licensing activity was going to happen in Massachusetts. That's where the product was going to be manufactured. That's where it was going to be sold from. And we cited three cases in the sports equipment or other licensing-type cases, soccer-specific, Fisher Medical, where that's how you determine place of performance. So even under place of performance analysis, it's Massachusetts. If you can't figure it out or if it's in multiple places, you default back to the place of contracting. Again, that's Massachusetts. So we think no matter how you look at it, you have to apply Massachusetts law, and we went under Massachusetts law. I'd like to turn to the tort claims asserted against Mr. Evans. One is the Chapter 93A claim. That's a Massachusetts unfair competition law. It goes out for the easy reason is that you can't bring that claim unless the complaint of activity occurs primarily and substantially in Massachusetts. Mr. Evans never went to Massachusetts. It was Plus One and Van Allen who saw Mr. Evans' patent application, called him to take a license. Mr. Van Allen traveled from Massachusetts to Virginia. He brought with him a fling stick, and they played golf in Springfield, Virginia. To the extent Mr. Evans did anything with regard to filing patent applications or trademarks, he did it from his home in Springfield at the Patent and Trademark Office in Alexandria, all in Virginia. There is no primary substantial connection with Massachusetts. The only thing that happened was email and telephone calls going back. There's an argument that turns the facts of this case on their heads, that somehow he induced them, he contacted them to fraudulently induce them. He's the one trying to enter the term sheet. He's the one trying to enforce the term sheet that the parties agreed to. So there's just no basis for liability or under the primary and substantially elements of that cause of action. Under the slander of title claim, there's three different failures of proof on that. One, there was no slander of title. The Plus One clearly abandoned its intent to use trademark applications. It had no prior lawful use of the fling mark. Now, we cited a page of cases in our brief that says they have prior lawful use. You can't use the Circle R registration before you actually get a registration certificate from the trademark office. They never got one. And they used it on every product they sold for a year, up until the time that Mr. Evans signed that. It also requires special damages. Now, special damages aren't damages, it's special damages. And I've looked this up before we filed our briefs and before our oral argument today. Special damages is either consequential damages or uncommon damages that you wouldn't expect in a situation like this. Well, if you abandon your mark and someone else scoops it up, I think you can expect it to incur some attorney's fees fighting at the trademark office over that. It's not special damages, so they have a complete failure of proof on that issue. And with regard to the declaratory judgment claim, I'm not real sure what it is. At first, they argue in their headings they had no intent to abandon their trademark applications. We argue that's irrelevant because it doesn't matter whether you intended to or not, they did. They filed intent to use applications. The time to file the next piece of paper at the patent office expired. They missed the statutory cure period. They're done under the Patent and Trademark Office rules. Their intent is absolutely irrelevant. And Mr. Evans has not made an issue of their intent. His point is that they have no lawful right to use those marks, even if they were using them in Congress before or didn't intend to abandon, because unlawful use does not give them prior common law rights. And I see my time is almost up, and so if you have any more questions. Thank you, Your Honors. Thank you, Your Honors. Mr. Zamuro. Thank you, Your Honors, and may it please the court, Bernard DeMuro for Mr. Van Allen and his company, Plus One. And obviously there's a dispute of fact between the parties over who invented what, but that's not at the heart of this matter. The conflicts analysis in this case is simpler than what the myriad of cases would suggest, as you mentioned, Judge Harris. Mr. Evans, we start with Mr. Evans pled this case as a breach of contract for Plus One's failure to perform the obligation to pay a royalty. He did not plead this case with, starting with count one, I have a valid contract. He did not raise the making or interpretation of religion. Is it sort of implicit in a breach of contract claim that there's a valid contract? And if the defense is there's no valid contract, how is this not a case about validity? In point of fact, we did, by way of affirmative defense and counterclaim, attack the validity of the contract. But he pled the case as a monetary breach of contract case. And we think he needs to be controlled by his pleadings. Is it your impression that the cases saying, all of the cases saying, the issue in this dispute is about contract validity begin with a claim that says, one, I have a valid contract? I think they're all just breach of contract claims. And then the defense comes in as, well, there's no valid contract, and that's what makes the dispute center around contract validity. If we accept that proposition at this point, then at the district court level, Mr. Evans continued to say, this is conflicts analysis controlled by place of performance. He said that in the underlying case, both in defense of the preliminary injunction motion and motions to dismiss and summary judgment. He never said this is a place of making case. And I think he's waived that argument now at this time. So if you apply place of performance, it is where the royalties are to be received. Mr. Mills' argument that plus one had all these other obligations of manufacturing, marketing, and branding the product, those are not the elements of the breach. They are not the complaints of the breach. The breach here, and then you can, I'm sure you've read licensing cases where the license or says the party who's supposed to be paying me royalties isn't working in good faith to sell the product. That's not this case. This is, I did not get paid my royalty case. Do you agree that under Virginia law, the general standard for figuring out the place of performance is that it's the place where the majority of contract services are to be performed, or no? No, I don't agree with that. It's, you look at, you get to that. That's an exception to the exception. If you've got place of making is different than place of performance, then you've got two choices at that juncture. The equitable trust choice is you look to, if there's an interpretation issue, but the primary issue is payment, then you apply the law of the place of performance, where you're supposed to receive the payment. And the equitable trust case was a contract made in, a guarantee made in Virginia, but to be performed in Maryland, so you've got these split jurisdictions. Equitable trust, a fourth circuit case, approved the application of Maryland law, the place of performance, and the interpretation was just dragged along. The other exception is when, and I think this is the exception they want to apply, is where there are multiple places of performance. I think there is a case that says you go to the place of making, but that's not this case. There's only one place for performance of payment of a licensing fee, and that's here in Virginia. And to the extent you look at where Mr. Van Allen and Plus One had to perform, they did everything they were going to do in Massachusetts. You don't have a split of jurisdictions. So- Can I ask you just a quick question? If this were a case about validity, just assuming hypothetically that this were a case about validity and not about performance, then what is your understanding of Virginia choice of law rules? Where do we end up if this is a case about validity? We follow the traditional test, the place of making, governance, validity, interpretation, etc. But this is a case of- All right, but so you're conceding that if this is a case about validity, we're under Massachusetts law? Yes, the last act to form the contract was indeed in Massachusetts. That's where Mr. Van Allen signed. But our cases, their licensing cases don't involve payment of royalty fees. If you look at their cases, Fisher, Socker, Mom, etc., the issues are much different. One is a choice of law in a tort case. One is a choice of law in a non-compete case. One is a choice of law in a, no, it's not a choice of law, it's a venue case. Their licensing cases that have some conflicts analysis do not apply to the facts set in this case. I would recommend to the court both the equitable trust case, which was a guarantee case in the place of performance is where the money is supposed to be paid. We also have the Bismarck case, which is a promissory note case. Place of performance is where the monies on the note are to be received. Judge Hilton, I don't believe, cited either case for that exact proposition, but he did find that place of performance was in Virginia. So if we're under Massachusetts law, again, just purely hypothetically, what's your best argument for why this is not a binding agreement under Massachusetts law? Massachusetts may be slightly less hostile to agreements to agree than Virginia, but we're talking as slight as a small crack in the window. Because as Your Honor has discussed with Mr. Mills, the agreements to agree are unenforceable in Massachusetts. There's a strong inference against or presumption against such agreements to agree being enforceable. You have to have clear evidence of a definite contract on all material and essential terms. And this is where I would part with my friend Mr. Mills. He gave you three essential terms and said they were in the term sheet. He's defining what the essential terms are. What do you think is missing? What's the biggest thing that's missing? Well, the various undefined terms. Gross sales. You think gross sales is undefined? Pardon me? You think that's undefined? Yes, because it doesn't refer to gap. It refers to, it could mean, is it gross sales without rebates? Gross sales without discounts? And there are a number of other things to determine. How the monies would be guaranteed was left open in the contract. Was it going to be Mr. Van Allen or another security source? The degree of inspection and confidentiality was left undefined. The definition of have made rights, which is a technical term I understand in this area, was undefined. When foreign manufacturing would be forbidden for the purpose of avoiding payments was undefined. The scope of the covenant not to sue. The covenant not to sue, if you read it literally the way Mr. Evans wrote it, immunized his company from any violation, no matter what, even a violation of the licensing agreement. And doesn't the arbitration clause, to the extent there is one, just say arbitration clause? That's it? It does. And they're all listed at pages 10 through 15 of our main brief. Cooperation of third party infringement suit is undefined. The definition of, well, then you get to the terms that Mr. Evans was trying to add. And those are found at page 14 and 15 of our main brief. There must be 15, 16 different clauses of material scope that he seeks to add. The definition of license patents, his identity as the inventor of throw golf, the effect of termination provisions, and the limitations of liability, it goes on and on and on. Does the term sheet indicate when and how often royalty payments were to be paid? That's confusing. There is confusion in the term sheet, if you look at that one line, yes, it's confusing. I showed Judge Hilton, he didn't mention it in his opinion, but the term sheet's signed, the first draft, and that's four pages, the first draft of the licensing agreement for Mr. Evans is 23 pages long. It's a template out of the University of Texas' research foundation. It is extraordinarily detailed and harsh, and actually it was marked up to make it, the University of Texas can be a harsh licensor for when they're giving people millions and millions of dollars. This is not this case. That licensing agreement is exhibit one in proof that the term sheet was still yet to be negotiated. As the Massachusetts law, the Gorin case, which is the case they rely on primarily, seller of a commercial property signs a term sheet. He reneges because I think the case says he got a better offer before closing. The court enforced that agreement on two basic facts. The only thing that was going to be added to the contract, the final contract in the Gorin case, was a form commercial real estate contract used in the Boston area by the local real estate board or entity or agency. It was a form. You're going to fill in the prices and the payment dates and the closing dates that are in the term sheet. And number two, the seller had signed such a form in the past when he sold another piece of property. That proved to the judge that this is simply a ministerial act. I'm going to enforce it, the term sheet in the Gorin case. That is not this case. All you have to do is look at the term sheet and the 23 page licensing agreement. We also have a finding of fact by Judge Hilton that the term sheet is not an enforceable contract. He describes it as imprecise, informal, and provisional. That's a finding of fact. That finding of fact has not been appealed. And so we ask that that be raised to the count, I guess, or collateral estoppel in this matter. The other cases, Mr. Mills cites in his brief, the recent cases, Hancock versus Leister. It was quite clear in that case that the defendant regretted settling and he was trying to renege on the settlement. The term sheet was complete. It was a commission's case. And as I read the case, it's a little unclear. He found out that more commissions were due, so his proposed split, he thought, was unfair. In the Duff versus McKay case, the only dispute was payment date. And the contract was, or the term sheet was enforced in that case because everybody agreed, just like in the Gorin case, that there were professional and industry norms that would provide that date. Again, that's not this case. If I might move on to our appeal. Counts one to four in our counterclaim were mooted out by the ruling in our favor on the term sheet. But count five was slander of title, false statements to the PTO, we alleged. Mr. Evans had to sign a declaration when he filed his trademark applications, saying he had an intent to use the fling stick marks and that no other person was entitled to use the marks. The district court found that the first statement was not false. He did not address the second statement. On summary judgment, on this count, we sought a declaration that the statements made by Mr. Evans to the PTO were false. He did not, this issue about attorney's fees being collateral fees being recoverable is clear. Virginia law, Hiss versus Freidelberg, if somebody's breach causes you to incur attorney's fees, you're entitled to recover them. On the intent to use, the law is quite clear. Subjective intent is not enough. You have to demonstrate that you had a firm intent to use the marks. Mere registration is not enough. There was no objective evidence on this point, no manufacturing plans, no business or financial plans, no website, nothing using our marks. He even told his lawyers that Van Allen inadvertently let his marks elapse and can I go in and swipe those marks, and that's precisely what he did. He told another lawyer, this is what I'm going to do, don't tell plus one's lawyers. So the statement that he had an intent to use was clearly false, and the judge did not cite anything in the record to the contrary. No other persons were entitled to use the mark. I see that my time is up. I have reserved five minutes. It's reserved. I would like to come back and finish this argument. You're able to come back. Thank you. Mr. Milne. First, I appreciate the concession on validity, and I think that concession resolves the choice of law issue. It should be Massachusetts law. With regard to the issue that we somehow waived the argument, I don't understand that at all. We argued in the alternative, clearly, but at page 10 of our reply brief, I quote the first paragraph from my argument on summary judgment. The first issue here is choice of law. There's only one fact relevant to the choice of law determination, and that's where the contract was finally executed. And everybody agrees that the last act necessary to make this a binding contract was Mr. Van Allen's signature in Massachusetts. And Virginia applies the lex loci contractus rule. So the last act necessary to make a binding contract would dictate Massachusetts law. That's what we argued. That's our first argument. And we argued in the alternative, then under place of contracting. I'd like to address a couple of questions that you asked, Judge Harris, which is why the cases seem confused. One, a number of the cases, for reasons I don't understand, are note cases. And note cases, there's a large body of law saying they are just peculiar instruments. And prior to the 1950s, they weren't governed by the UCC. And since then, they have been governed by the UCC. But they are just sui generis. And- So I mean, a lot of district courts have kind of taken this position, right? That there's this weird Virginia law. It doesn't seem to make any sense because it's just a very circuitous way of saying, okay, I guess place of performance, but in the most cumbersome way possible. And so they're just not going to apply it. They think they're old cases. They think they're weird cases. And they're not going to apply it. Is that what you're suggesting we should do? I don't know. I think that you have to follow, especially the Virginia Supreme Court on this. I think the Virginia Supreme Court has been crystal clear. I think the Federal District Courts- Has the Virginia Supreme Court ever overruled Poole? They've never overruled Arkl. Arkl is the leading case. But Poole's the one that says- It's a lower court. It's the Court of Appeals. No, I think Poole is the Supreme Court. And it says, yes, when it comes to formation, we go to the – when it comes to validity, we go to the place of formation. But if the place of formation is different from the place of performance, then we go to the place of performance. I don't think it does that. Or if it did, it sloughed in-  It sloughed in advertently. Breach is place of performance. And that's our position on that. And the note cases further confuse it when it gets to place of performance analysis, because they're peculiar instruments. And the law on that, they just had to pick one. It's where the payments are received under note cases. But because note cases are peculiar and sui generis, we don't think they have any applicability under place of performance analysis. I don't understand the covenant not to sue argument. A license, if you go in words and phrases, another term for another – a synonym for a license is a covenant not to sue. That's what this agreement is. And I don't understand why that's not crystal clear. Dispute resolution. You raised the issue about the arbitration clause just as arbitration clause. It's not an essential term. And, Your Honor, I see my time is up. If I may make one further point. Before you leave arbitration, may I just follow up on that? I mean, it seems like we hear so many cases where all anyone cares about is the arbitration clause. It turns out to be so important in so much litigation. How is that not a pretty important term in a contract? I'm not saying it's not- Whether you have a right to go to court or not. I'm not saying it's not important. It's not essential. There are – most agreements, I would say, don't even have dispute resolutions. To have a binding contract under the law of any state, you don't need to have a dispute resolution provision. You can have a binding agreement without one. This one didn't have one. They didn't agree on a dispute. They talked about arbitration. They didn't agree on one. So the issue is- I thought the point in – is it Gorin? Is that that big Massachusetts case? That, look, everything that was important got taken care of. And what was left, there's sort of industry customs that would help fill it out. But there's no industry custom about arbitration. It's yes or no. Are you going to have a requirement to arbitrate? I think it's just – it's a non-essential term. And so it's just not part of the contract. And so you can have a binding one without being essential. But I would like to quote from Gorin, which says, if parties who sign preliminary agreements do not intend to be bound, Massachusetts law requires that they speak plainly. Certainly any person intending not to be bound who employs such a form, which says much is to agreement but leaves many points uncovered, must be ready to expect that the other party will think the document binding and actionable. And then Gorin actually gives language that it recommends Massachusetts lawyers use. The parties mutually acknowledge that their agreement is qualified. And if they therefore – and they therefore contemplate drafting and executing a more detailed agreement, they intend to be bound only by the execution of such an agreement and not by this preliminary agreement. That's what Massachusetts law requires. That's what didn't happen here.  Thank you, Your Honors. Thank you. If I might digress to the – your point, Judge Harris, about what law governs when validity is at issue. That is the traditional rule when validity is the only issue. But if, as in the equitable trust case, where both performance and some – performance on the guarantee and some interpretation of the guarantee was needed, equitable trust approved that you default to a place of performance. Are you taking back your concession? Making sure it's clear. The concession was where only validity and interpretation is at issue. Only validity is never at issue. It's that first it has to be – you have a valid contract, and then there's a – and then there's a breach claim. They always come together. If we use that as a basis, then, yes, I am taking back my concession because equitable trust says – equitable trust says when the guarantee is at issue, the interpretation of the guarantee is at issue, and performance of the guarantee is at issue, you go – you default to place of performance. That's what it says. And we also cited Blomendale v. Imbrescia, 25 Mass. App. Court. And in that case, the – one of the parties, the buyer, introduced new elements which had not been discussed, let alone agreed upon. That was a quote. And then it continues. It follows that the parties did not intend to be bound by the preliminary document. And if – I don't have time to list everything that Mr. Evans added to the contract, the licensing agreement, but they're at pages 13, 14, 15 of our initial brief. It goes on and on and on, and I offer that as Exhibit 1. When I was up here last, I was finishing my argument on count five, slander of title. The statement that no other persons were entitled to use this mark was clearly false, although Judge Hilton didn't reach it. Mr. Evans knew that Plus One was selling the product since early 2014. He saw and used the product with the marks. He did not dispute that Plus One was using the marks. This argument that misuse of the registration symbol bars your right to apply for applications is wrong. It's just wrong. You need conclusive proof. In order for that to occur, the movement needs conclusive proof of the use of the symbol with a substantial violation of non-trademark laws with the intent to deceive the purchasing public. For example, the symbol R is used in some false advertising Lanham Act case. And if you can prove intent to deceive, then you might get to that point. But inadvertent mistakes, and there's a case cited in our brief, are not enough. In Garrity, misuse was found because the acts violated 19 state laws. He did not attempt to prove in any way that we intended to deceive the public or that we actually used the mark symbol, the registration symbol, in a way that constituted a non-trademark violation. In Count Six, we sought a declaratory judgment that Plus One did not intentionally abandon the marks. What happens here is you file your trademark application. You're given six months, I believe, to fill out further applications. That date came and went. Mr. Van Allen testified it came and went inadvertently because I changed lawyers at that juncture and it fell through the cracks. There is no evidence to the contrary. In fact, all the proof is that it was a mistake. Judge Hilton found that Mr. Van Allen's subjective intent is not relevant. Unfortunately, I believe Judge Hilton was incorrect. The Lanham Act says that in order for you to intentionally abandon a mark application, you have to intend to do so, and so does the case law. Objective intent, or I'm sorry, subjective intent is relevant. And then finally, on the Deceptive Trade Practices Act, it's here we have a case where all the communications from Mr. Evans went into Massachusetts. They were designed to make Mr. Van Allen think he was negotiating a reasonable licensing agreement, that they were going to work together, they were going to go to the PGA show together, they were going to work together in the burgeoning area of Fling Golf, Mr. Van Allen's product. The detriment occurred in Massachusetts. The injury occurred in Massachusetts. That's primary and substantial. That's unlike all the other cases where the communications left Massachusetts and went to New York, and that's where the injury was. That's the, I believe, the Bushkin case. Our case is Massachusetts was the center of gravity of all the deceptive acts. Thank you. Thank you, counsel. All right. We will ask the clerk to give us a brief recess, and we'll come down and greet counsel. This honorable court will take a brief recess.
judges: Roger L. Gregory, Stephanie D. Thacker, Pamela A. Harris